## HARVEY BROTHERS *v.* JEWELL.

1. Possession by the defendant in attachment of the personalty attached, on the day of the levy and for some time previously, he using and controlling the same apparently as his own, makes a *prima facie* case against the claimants; and if, in reply thereto, they show only the admissions of the defendant in favor of their title, and a surrender of possession to them by him accordingly a few hours before the levy was made, failing to adduce fuller and more satisfactory evidence which, were their claim well-founded, they might have adduced, a verdict finding the property subject is not unwarranted.

2. Where the court charged fully and properly on the theory urged by the claimants that the property was purchased for them, and that it never belonged to defendant in attachment, it was not error, as against them, to charge also touching a sale by him to them, although there was no evidence of any such sale except that he delivered them possession.

3. What the objection was over which certain evidence was admitted does not appear.

4. The order disposing of the *certiorari* being obviously inaccurate might have been corrected by motion in the court below, without bringing the case to this court; and as the shape of the order in no wise affects the merits, this court will not reverse the judgment but direct that a proper order be substituted.

January 13, 1890.

*Certiorari.* Attachment. Claim. Admissions. Title. Verdict. Charge of court. Evidence. Practice. Before Judge MADDOX. Floyd superior court. March adjourned term, 1889.

Attachment in favor of Jewell against Johnson, levied on a mare, to which a claim was interposed by Harvey Brothers. The property was found subject by a jury in the city court of Floyd county. The claimants moved for a new trial, which was denied; and by *certiorari* to the superior court, this denial was assigned as error. There the judge passed the order quoted in the opinion, and the claimants excepted. For the rest of the report, see the opinion.

JUNIUS F. HILLYER, for plaintiffs in error.

R. R. HARRIS and REECE & DENNY, *contra.*

BLECKLEY, Chief Justice.

1. One of the errors assigned is that the court erred in refusing to sustain the *certiorari.* This brings up the whole merits of the case as embodied in the return of the judge of the city court to the writ of *certiorari.* The error imputed to the city court in the petition for *certiorari* is, in overruling the motion made in that court for a new trial, which motion was predicated on the general grounds, on the special ground that the verdict was contrary to the charge of the court, and on two other special grounds. The general grounds and that which alleges that the verdict was contrary to the charge may be considered together.

Did the plaintiff in attachment make a *prima facie* case against the claimants, and if so, did the claimants adduce evidence which so clearly overcame that *prima facie* case as to require the court to set aside the verdict? The mare in controversy was in the possession of the defendant in attachment for about one year, used and controlled by him apparently as his own. This posses-

sion continued down to the day on which the attachment was levied, and the claimants acquired their possession from the defendant on that day and only a short time before the levy. Surely this was enough to make a *prima facie* case and put the claimants on proof of their title. The proof they made was a certificate by the defendant that he purchased the mare with the money of one of the claimants, and that he admitted on the day of the levy that the mare was their property, and gave an order to one of them upon the livery-stable keeper in whose custody she then was to turn her over to claimants, or rather to one of them, which was done. There is nothing in the evidence to show any right or title in the claimants or either of them, save the admissions of Johnson and the order which he gave to the stable-keeper. These admissions may have been true, or they may have been false. If true, it was easy to support them, if not by the testimony of others, certainly so by that of one or both of the claimants. Neither of them, however, ventured to testify ; and as one of them was a brother-in-law or otherwise related to Johnson, and as no explanation was given of how or why Johnson had possession of the mare for such a length of time, the jury were well-warranted in finding that his mere declarations and an act done on the very day the attachment was levied did not establish title in the claimants. The case needed clearing up, and it was in their power to clear it up. They failed to do so, and that circumstance may have had great weight with the jury.

2. Another ground of the motion for a new trial is that the court charged the jury "to look into all the evidence and from that find what the facts are. Whom did the mare belong to, at the time of the levy of the attachment ? Did she ever belong to W. R. Johnson ? If she did, did he ever sell her to claimants ? You must look at the evidence and find the facts ?" It is insisted

that this charge was erroneous, because there was no evidence respecting any sale from Johnson to the claimants, and because they rested their right to the mare solely on the fact that their money or the money of one of them had been used by Johnson to pay for her. But certainly this charge did the claimants no harm, for it gave them a chance with the jury on title derived from Johnson, even though the jury might not believe the theory set up by the claimants. On that theory the court charged distinctly, as appears from a copy of the charge in the record, that admissions of defendant against his interest, made before the pendency of the litigation, are evidence, and that if he, Johnson, advanced any money on the purchase of the mare, such advance would not give him a title, if he bought her for the claimants.

3. The last ground of the motion complains of the admission in evidence of a certain note given by Johnson to the plaintiff in attachment, in which note reference is made to the mare or to some mare. The ground of this objection does not appear in the motion for a new trial or elsewhere in the record, and so we need not consider whether or not the court erred in overruling the objection.

We have now gone through the case itself which the superior court had before it for judgment, and the result is that no error was committed in not sustaining the *certiorari.*

4. The exception that the court erred in shaping the order by which the judgment refusing to sustain the *certiorari* was enunciated is well-taken. But the terms of the order could have been corrected without bringing the case to this court, and the mistake is so palpable that we can have no doubt the court below would have corrected the order, if any request or motion for that purpose had been made by counsel. We say we

have no doubt this would have been done, because the order as it stands is absurd; for it says that "after hearing the within petition for *certiorari* and argument of counsel, said petition is dismissed, and the writ of *certiorari* refused." The writ of *certiorari* having already been granted and the hearing been had upon it, of course there was no intention to refuse the writ and dismiss the petition. These terms were inadvertently used, most probably by the counsel who prepared the order for the judge's signature, or if not by counsel, by the judge himself. The shape of the order, however, has nothing to do with the merits or justice of the case or with the propriety of refusing to sustain the *certiorari*. This being so, we shall not reverse the judgment merely to have the order thrown into proper form, as this can be accomplished by direction from this court. We accordingly direct, for the sake of regularity, that in place of the order passed the court substitute one overruling the *certiorari* and affirming the judgment of the city court.

*Judgment affirmed, with direction.*